# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v BRUNER

Docket No. 154779. Argued on application for leave to appeal January 10, 2018. Decided March 28, 2018.

Carl R. Bruner II was convicted following a jury trial in the Wayne Circuit Court of first-degree premeditated murder, MCL 750.316(1)(a); assault with intent to commit murder, MCL 750.83; being a felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b, in connection with the shooting of two security guards outside a Detroit nightclub in June 2012. No eyewitnesses saw the shooter. Bruner was tried jointly before a single jury with codefendant Michael Lawson. The prosecution argued that Bruner was the shooter and that he was aided or abetted by Lawson. Bruner's defense was that he was not present and was not the shooter. Lawson's defense was that he was merely present at the scene and was not otherwise involved in the shooting. The prosecution planned to call as a witness Westley Webb, who did not testify at Bruner's preliminary examination but did testify at Lawson's preliminary examination about statements he claimed Lawson had made to him a few days after the shooting regarding Bruner's actions on the night at issue. At trial, the prosecutor emphasized in his opening statement that Webb was a key witness who would testify that Bruner had a gun; however, at the close of the prosecution's case in chief, the prosecutor informed the court that Webb could not be located and asked to read Webb's prior testimony to the jury. The trial court declared Webb unavailable. The prosecutor conceded that the prior testimony could not be admitted against Bruner and offered to remove mention of Bruner from the transcript of Webb's testimony. The trial court determined, over defense counsel's objection, that Webb's testimony was admissible against Lawson and that a limiting instruction would be adequate to ensure the jury would not consider the redacted testimony against Bruner. When the testimony was read into the record, each mention of Bruner's name was replaced with the word "Blank," and the court instructed the jury to consider the testimony only against Lawson. The Court of Appeals, METER, P.J., and O'BRIEN, J. (SHAPIRO, J., concurring), affirmed both defendants' convictions in an unpublished per curiam opinion, issued October 11, 2016 (Docket Nos. 325730 and 326542), holding that Bruner's right to confront the witnesses against him under the Sixth Amendment of the United States Constitution was not implicated by the admission of Webb's preliminary examination testimony because Lawson's statements to Webb were not testimonial and Webb's testimony was neither offered nor admitted against Bruner. Bruner applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other peremptory action. 500 Mich 1031 (2017).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court, in lieu of granting leave to appeal, *held*:

The admission at a joint trial with a single jury of an unavailable witness's prior testimony about a codefendant's confession violated Bruner's constitutional right to confrontation, notwithstanding the redaction of Bruner's name and the reading of a limiting instruction to the jury. Bruner had no opportunity to cross-examine the witness, and because the substance of the witness's testimony—the codefendant's confession that implicated the defendant—was so powerfully incriminating, the limiting instruction and redaction were ineffective to cure the Confrontation Clause violation. The judgment of the Court of Appeals was reversed, and the case was remanded for that Court to consider whether the prosecution established that the error was harmless beyond a reasonable doubt.

1. The Confrontation Clause, set forth in the Sixth Amendment of the United States Constitution, provides that in all criminal prosecutions, the accused has the right to be confronted with the witnesses against him or her. Because the right is implicated only for testimonial evidence, the threshold question for any Confrontation Clause challenge is whether the proffered evidence was testimonial. "Testimony" is a solemn declaration or affirmation made for the purpose of establishing or proving some fact. Although there may be ambiguity at the margins, some statements qualify as testimonial under any definition, including ex parte testimony at a preliminary hearing. Testimonial statements of witnesses absent from trial may be admitted only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the witness. When more than one defendant is being tried before a single jury, some evidence may be admissible as to one defendant but violate a codefendant's confrontation right. When that is the case, a court must either exclude the testimony or take measures to eliminate the confrontation problem. What measures are sufficient depends on the context and content of the evidence. If a witness's testimony can be redacted to eliminate reference to the codefendant's existence, that witness will not have borne testimony against the codefendant in any Sixth Amendment sense. Sometimes the court can eliminate the confrontation problem by instructing the jury to consider testimony against one defendant, but not the other. Because juries are presumed to follow their instructions, the result of a limiting instruction can often be as effective as excluding or redacting the testimony. However, sometimes evidence is too compelling for a jury to ignore even with a limiting instruction. Under *Bruton v United States*, 391 US 123 (1968), limiting instructions are categorically inadequate to protect against evidence that a nontestifying defendant confessed and implicated a codefendant in that confession.

2. Webb's preliminary examination testimony was testimonial in nature. The Court of Appeals erred in holding that there was no Confrontation Clause violation (and therefore no *Bruton* violation) by ascribing significance to the nontestimonial nature of the statements Webb attributed to Lawson. Although Lawson's nontestimonial hearsay statements would not have implicated the Confrontation Clause if Webb had testified at trial, because Bruner's confrontation right would have been vindicated by cross-examining Webb, Bruner never got to cross-examine Webb. Because Webb's prior testimony was testimonial, the admission of that testimony implicated Bruner's confrontation right.

3. Neither the court's instruction that the jury should consider Webb's testimony only with respect to Lawson nor the redaction of Bruner's name from Webb's testimony remedied the violation of Bruner's confrontation right. Webb was a witness against Bruner for Confrontation Clause purposes in spite of the remedial steps taken by the court to attempt to limit the jury's consideration of Webb's testimony as only against Lawson. The United States Supreme Court held in *Bruton* that when one codefendant implicates another at their joint trial, that evidence is so powerfully incriminating that allowing it to go uncross-examined deprives the nonconfessing defendant of a fair trial. In such circumstances, a limiting instruction cannot be trusted to eliminate the risk of prejudice and is not an adequate remedy for a confrontation violation. The redaction of Bruner's name was also not an adequate remedy. A codefendant's confession may be admissible if it is redacted to eliminate not only the defendant's name, but any reference to his or her existence. However, the obvious redaction used here—inserting the word "Blank" in place of Bruner's name—did not achieve that result, given that "Blank's" conduct was identical to what the prosecutor told the jury Bruner had done and that, because Bruner and Lawson were the only people charged, there was no other person to whom "Blank" might have referred. Because the limiting instruction and crude redaction were inadequate to protect Bruner, he was deprived of his right to confront Webb, a witness against him. Accordingly, the Court of Appeals judgment was reversed and the case remanded to the Court of Appeals to consider whether the prosecution established that the preserved constitutional error was harmless beyond a reasonable doubt.

Court of Appeals judgment reversed in part; circuit court order vacated; case remanded to the Court of Appeals for further proceedings.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED March 28, 2018

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                          No. 154779

CARL RENE BRUNER II,

       Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MCCORMACK, J.

In this case we consider whether the admission at a joint trial with a single jury of an unavailable witness's prior testimony about a codefendant's confession violated the defendant's constitutional right to confrontation, notwithstanding the redaction of the defendant's name and the reading of a limiting instruction to the jury. It did. The defendant had no opportunity to cross-examine the witness, and because the substance of the witness's testimony—the codefendant's confession that implicated the defendant—

was so powerfully incriminating, the limiting instruction and redaction were ineffective to cure the Confrontation Clause violation. Accordingly, we reverse the judgment of the Court of Appeals and remand for that Court to consider whether the prosecution established that the error was harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994).

## I. FACTS AND PROCEDURAL BACKGROUND

The defendant, Carl Rene Bruner II, was convicted of first-degree premeditated murder, MCL 750.316(1)(a); assault with intent to commit murder, MCL 750.83; being a felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b. Bruner's convictions arose from the shooting of two security guards outside a Detroit nightclub in June 2012. One guard was struck in the back, but he was wearing a bulletproof vest and was not harmed. A second guard was killed. No eyewitnesses saw the shooter.

Bruner was tried jointly with codefendant Michael Lawson before a single jury. The prosecution argued that Bruner was the shooter and that he was aided or abetted by Lawson. Bruner's defense was that he was not present and was not the shooter. Lawson's defense was that he was merely present at the scene and was not otherwise involved in the shooting. The prosecution planned to call Westley Webb as a witness. Importantly, Webb had testified at Lawson's preliminary examination about statements he claimed Lawson had made to him a few days after the shooting; Webb did not testify at Bruner's preliminary examination.

At Lawson's preliminary examination, Webb testified that Lawson told him that the police were investigating Lawson because of an incident at a nightclub. Webb

2

testified that Lawson said the bouncers threw Bruner out for fighting and therefore Lawson left the club with Bruner and they drove around the area in Bruner's car. Webb further testified that Lawson said that the two men parked down the block from the nightclub, Bruner walked off, and Lawson stepped out of the car for a cigarette. Webb testified that Lawson went on to say that he got back into the car and drove away because he heard gunshots. Although Webb did not offer the fact that Lawson described Bruner having a gun or committing a shooting, Webb was impeached with his police statement, in which he said Lawson described Bruner coming back with a gun.

The prosecutor understandably viewed Webb as a critical witness against Bruner. At trial, the prosecutor emphasized in his opening statement that Webb would be the key witness whose testimony would place the gun in Bruner's hands. But things do not always go as planned. And at the close of the prosecution's case in chief, the prosecutor informed the court that Webb could not be located and asked to read Webb's prior testimony to the jury. The trial court declared Webb unavailable. The prosecutor conceded that the prior testimony could not be admitted against Bruner and offered to remove mention of Bruner from the transcript of Webb's testimony. The trial court determined, over defense counsel's objection, that a limiting instruction would be adequate to ensure that the jury would not consider the redacted testimony against Bruner. But the trial court found the testimony admissible against Lawson and it was read into the record. Each mention of Bruner's name was replaced with the word "Blank" and the court instructed the jury to consider the testimony only against Lawson.

The Court of Appeals affirmed Bruner's convictions, holding that the Confrontation Clause was not implicated by the admission of Webb's preliminary

examination testimony because Lawson's statements to Webb were not testimonial and Webb's testimony was neither offered nor admitted against Bruner.[1] Bruner filed for leave to appeal in this Court. We ordered oral argument on the application, instructing the parties to address whether the admission of Webb's preliminary-examination testimony at Bruner's joint trial with Lawson violated Bruner's constitutional right to confrontation, despite the trial court's redaction of that testimony and limiting instruction to the jury, see *Gray v Maryland*, 523 US 185; 118 S Ct 1151; 140 L Ed 2d 294 (1998); *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968); and, if there was a Confrontation Clause violation, whether the error of admitting the testimony was harmless, see *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

## II. DISCUSSION

Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011). De novo review means we review this issue

---

[1] Judge SHAPIRO concurred in the judgment but wrote separately to disagree with the majority's conclusion that the limiting instruction was curative. He reasoned: "[I]t would be erroneous to conclude that the jury could ignore the significance of the statement as to Bruner because it was the only evidence that put a gun in his hand at the time of the shooting. Expecting jurors to compartmentalize the relevancy of this very significant evidence so as to apply it only to one defendant is simply unrealistic." *People v Bruner*, unpublished per curiam opinion of the Court of Appeals, issued October 11, 2016 (Docket Nos. 325730 and 326542) (SHAPIRO, J., concurring), p 1. Judge SHAPIRO agreed with the majority, however, that no confrontation issue arose because Lawson's statements were nontestimonial and, finding that no other rule of evidence barred admission of the testimony, he felt bound to affirm. *Id*. at 1-2.

independently, without any required deference to the courts below. *People v Barrera*, 451 Mich 261, 268; 547 NW2d 280 (1996).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. The confrontation right is incorporated to apply to states through the Due Process Clause of the Fourteenth Amendment. *Pointer v Texas*, 380 US 400, 406; 85 S Ct 1065; 13 L Ed 2d 923 (1965). The right is implicated only for "testimonial" evidence, because the Confrontation Clause applies to "witnesses" against the accused—in other words, those who "bear testimony." *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The threshold question for any Confrontation Clause challenge, therefore, is whether the proffered evidence is testimonial. "Testimony" is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. (quotation marks and citation omitted). Although there may be ambiguity at the margins, "some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing." *Id*. at 52. "Testimonial statements of witnesses absent from trial" may be admitted "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id*. at 59.

Joint trials with a single jury present a special problem. Some evidence may be admissible as to one defendant but violate a codefendant's confrontation right. When that is the case, a court must either exclude the testimony or take measures to eliminate the confrontation problem. See *Richardson v Marsh*, 481 US 200, 209-212; 107 S Ct 1702; 95 L Ed 2d 176 (1987). What measures are sufficient depends on the context and content of the evidence. If, for example, a witness's testimony can be redacted to eliminate

5

reference to the codefendant's existence,[2] that witness will not have borne testimony against the codefendant in any Sixth Amendment sense. *Id*. at 211. Sometimes the court can accomplish the same by instructing the jury to consider testimony against one defendant, but not the other. *Cruz v New York*, 481 US 186, 190; 107 S Ct 1714; 95 L Ed 2d 162 (1987) ("[A] witness whose testimony is introduced in a joint trial with the limiting instruction that it be used only to assess the guilt of one of the defendants will not be considered to be a witness 'against' the other defendants.").

Since we presume juries follow their instructions, the result of a limiting instruction can often be as effective as excluding or redacting the testimony. But other times evidence is too compelling for a jury to ignore even with a limiting instruction. Especially relevant here, limiting instructions are categorically inadequate to protect against evidence that a nontestifying defendant confessed and implicated a codefendant in that confession. *Bruton*, 391 US 123. In such a case, the confrontation problem persists as if no instruction had been given at all. *Id*. at 137.

## III. APPLICATION

Finally, to the issues here, of which there are two. First we must consider the threshold question whether Webb's preliminary examination testimony is "testimonial." That question answers itself. It is *Webb's* testimony that presents a straightforward confrontation problem. And the content of Webb's prior testimony places it squarely in

---

[2] The codefendant must be truly erased from the testimony, and in such a way that does not raise suspicion. See *Richardson*, 481 US at 211. Thus, blank spaces, blackouts, code names, or even grammatical structures that tip the jury off to the defendant's erasure may not be enough to cure the confrontation problem. See, e.g., *Gray*, 523 US 185.

6

the category governed by *Bruton*. The pitfall that must be avoided in this case—and that which the Court of Appeals landed in—is ascribing significance to the nontestimonial nature of the statements Webb attributed to Lawson. To be sure, Lawson's nontestimonial hearsay statements would not have implicated the Confrontation Clause if Webb had testified at trial—Bruner's confrontation right would have been vindicated by cross-examining Webb. But Bruner never got to cross-examine Webb.[3] Because Webb's prior *testimony* was, of course, *testimonial*, the admission of that testimony implicates Bruner's confrontation right.

The second question we must answer is whether Webb was "a witness against" Bruner, in spite of the remedial steps taken by the court to attempt to limit the jury's consideration of Webb's testimony as only against Lawson. US Const, Am VI. Specifically, did the court's limiting instruction to the jury and redaction of Bruner's name cure the confrontation problem? To answer that question, we consider the content these measures purported to limit. And here, the Supreme Court's decisions in *Bruton* and *Gray* provide meaningful rules.

The *Bruton* Court held that a jury cannot be expected to wholly disregard a confession in which one codefendant implicates another at their joint trial. *Bruton*, 391 US at 124. It reasoned that an accused admitting both his and his codefendant's guilt is

---

[3] That *Lawson*'s counsel cross-examined Webb does not mitigate the confrontation problem. In fact, as a result, the jury heard an account of Lawson's alleged statements that had been shaped by Lawson's cross-examination to benefit Lawson's defense that he was merely present and Bruner alone was to blame, and correspondingly, therefore, even more damaging to Bruner.

such powerfully incriminating evidence that allowing it to go uncross-examined deprives the nonconfessing defendant of a fair trial. In such a case, we cannot trust a limiting instruction to eliminate the risk of prejudice. While generally we presume juries follow their instructions, *Richardson*, 481 US at 211, a presumption is just that—and *Bruton* held the presumption rebutted when one nontestifying codefendant implicates another. And, importantly for our purposes, a cautionary instruction does not eliminate this particular confrontation problem: "The effect is the same as if there had been no instruction at all." *Bruton*, 391 US at 137.

Webb's testimony presented such a problem. Because Bruner did not cross-examine Webb, and the substance of Webb's statement placed it in a category "in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored," *id*. at 135, the limiting instruction was not an adequate remedy for the Confrontation Clause violation.

Nor was the redaction. There are measures a court can take that permit the admission of a codefendant's confession that would otherwise violate *Bruton* without the need for separate trials or juries, including, in some cases, redaction. A codefendant's confession may escape *Bruton*'s protective rule if it is "redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 US at 211. The obvious redaction used here (inserting the word "Blank" in place of Bruner's name), however, did not achieve that result and specifically ran afoul of *Gray v Maryland*, 523 US 185. In *Gray*, blank spaces or the word "delete" were substituted for the defendant's name to attempt to avoid the *Bruton* problem. The United States Supreme Court held that

8

"[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result." *Gray*, 523 US at 192.[4]

Far from eliminating any reference to Bruner's existence, the jury instead got a wink and a nod about an unnamed person, "Blank." Blank's conduct was not just uncannily similar to what the prosecutor told the jury Bruner had done. No, it was the same. And the prosecutor's opening statement had stressed that Webb's testimony would be the linchpin of the case against Bruner:

> And [the evidence] is going to corroborate directly with what Mr. Webb is telling you that Mr. Bruner came back with a gun involving got involved [sic] in a shooting and tie it up directly with where these shots came from.
>
> \* \* \*
>
> I think the statement from Mr. Webb is very clear. He knew that Mr. Bruner had a gun . . . .

Bruner and Lawson were the only people charged; there was no other person to whom "Blank" might have referred. The prosecutor told the jury that two people were involved in the murders, to expect Webb to incriminate Bruner, and that Webb's testimony would place the gun in Bruner's hand. In such circumstances, any juror who "wonders to whom

---

[4] Obvious deletion may in fact *aggravate* the testimony's prejudicial effect. The *Gray* Court, quoting Judge Learned Hand, noted that even if there had been "the slightest doubt as to whose names had been blacked out," blatant redaction "would have not only laid the doubt, but underscored the answer." *Gray*, 523 US at 194 (cleaned up).

the blank might refer need only lift his eyes to [the codefendant], sitting at counsel table, to find what will seem the obvious answer . . . ." *Gray*, 523 US at 193.

Because Bruner never had the chance to cross-examine Webb, Webb's testimony was inadmissible against Bruner under a straightforward application of the Confrontation Clause, as the prosecutor conceded and the trial court held. But while the testimony was technically admitted only against Lawson, the limiting instruction and crude redaction were inadequate to protect Bruner. Bruner was thus deprived of his right to confront Webb, a witness against him. Accordingly, we reverse the judgment of the Court of Appeals and remand to the Court of Appeals to consider whether the prosecution has established the preserved constitutional error was harmless beyond a reasonable doubt.[5] *Anderson (After Remand)*, 446 Mich at 406.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

---

[5] The defendant's motion to remand for consideration of the issues raised in his Standard 4 brief (per Administrative Order 2004-6) is denied.