*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES MATTHEW PIDGEON,

        Defendant-Appellant.

UNPUBLISHED
March 18, 2021

No. 346506
Wayne Circuit Court
LC No. 2017-010383-01-FC

Before: LETICA, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree murder, MCL 750.316; assault with intent to commit murder, MCL 750.83; carrying a concealed weapon, MCL 750.227; possession of a firearm by a convicted felon (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). On appeal, defendant raises numerous ineffective assistance of counsel claims. For the reasons stated in this opinion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from a shooting incident that resulted in the death of the victim. In June 2007, defendant was at a bar with his girlfriend at the time, Adelita Sullivan. While at the bar, Mark White, who was highly intoxicated, approached defendant and Sullivan. An altercation arose between defendant and White, resulting in the bouncer, Aaron Scott, escorting defendant and White out of the bar. White left the bar and walked across the street to a gas station. Defendant and Sullivan left the bar in their vehicle and also went to the gas station. While at the gas station, White asked the victim for a ride home in the victim's vehicle, and the victim agreed. At the same time that White and the victim left the gas station, defendant and Sullivan also left the gas station. As White and the victim were driving, a vehicle drove up next to the victim's vehicle and fired a single shot into the vehicle, striking the victim in the head and killing him instantly. Due to White's extreme intoxication on the night of the incident, he gave police various accounts of the incident, including an initial description of the shooter as a "young black male" driving a white Cadillac. On the basis of White's initial description, the police investigated Brian Howard, who possessed

a vehicle matching the description. However, nothing of evidentiary value was found in Howard's vehicle and he was eliminated as a suspect. Because the police could not find any leads based on White's inconsistent accounts of the incident, the case went cold for several years.

In February 2015, two police informants came forward with information about the incident. From the information, Dearborn Heights Police Sergeant Patrick Mueller contacted defendant's ex-girlfriend, Tawna Lopez, who told Sergeant Mueller that defendant was in a relationship with Sullivan at the time of the incident. Sergeant Mueller interviewed Sullivan three times, and each time Sullivan revealed more details about the incident, including that defendant shot a gun out of their vehicle on the way home from the bar on the night of the incident, but she did not know if any of the bullets hit anything. At trial in September 2018, the jury found defendant guilty of the victim's death.

On June 3, 2019, defendant filed a motion for a new trial on the basis of ineffective assistance of counsel. Defendant asserted an evidentiary hearing or new trial was necessary because trial counsel failed to reasonably investigate, prepare for defendant's trial, call favorable witnesses, and explore favorable evidence. In response, the prosecution argued that defendant failed to show how trial counsel made a serious mistake that prejudiced defendant. The trial court held a *Ginther* hearing regarding defendant's motion on November 19, 2019, and November 22, 2019. The trial court ultimately denied defendant's motion for a new trial, stating:

> So I have reviewed the trial transcript which was very useful because it brought back my memory of this trial and how the evidence came in, particularly the evidence of Adelita Sullivan, and also how this case was investigated many years later and the extraordinary sort of coincidence of finding Sullivan and her extreme importance as a witness in this case.

> But I cannot find any, you know, the defense trial counsel did not pursue every hair brained idea that [defendant] suggested to him is not ineffective assistance of counsel. He cross-examined all of the witnesses, he did as much as he could with them. And actually Scott and White didn't identify the [d]efendant as having committed the murder so it was really Adelita Sullivan that was the primary witness against him in this case and she said he shot the gun out the window of the car. And other circumstantial evidence seems to have been, seems to have made the case pretty clear that that was the car that [the victim] and White were in. Unfortunately[,] [the victim] couldn't provide any information about this and White was so profoundly intoxicated that he was virtually useless as a witness but the jury heard it all and they found the [d]efendant guilty and there was no ineffective assistance of trial counsel. So[,] the motion for a new trial is denied.

Defendant now appeals.

## II. ANALYSIS

On appeal, defendant raises numerous claims of ineffective assistance of counsel. The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246

(2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.*

Effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Defendant must overcome the strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Moreover, it is well established that "[c]ounsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Lastly, for all claims of ineffective assistance of counsel, the "defendant has the burden of establishing the factual predicate for his claim." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## A. INVESTIGATIVE SERVICES

Defendant argues trial counsel failed to conduct an adequate investigation. We disagree.

Defendant's argument in this respect is not wholly clear. Defendant first seems to suggest that his trial counsel did not conduct an adequate investigation because he "never consulted" Howard. Yet defendant's trial counsel explained at the *Ginther* hearing that he was aware that the police had investigated Howard and ruled him out as a suspect. Defendant does not explain why his counsel should have "consulted" an individual that the police had ruled out as a suspect, and thus fails to establish that this aspect of counsel's performance was objectively unreasonable.

Next, defendant seems to complain that his trial counsel failed to adequately investigate the case because he did not hire investigative services to find out "what changed" that led the police from suspecting Howard to suspecting defendant, especially when the initial description of the suspect did not match defendant. It is unclear, however, why trial counsel needed to hire investigative services for this purpose. Defendant's trial counsel explained at the *Ginther* hearing that the initial suspect was identified based on White's description, that White was severely intoxicated when he gave the description, and that the police had investigated White's description without success. After the case went cold, detectives had a breakthrough after talking with Lopez, who directed them to Sullivan, who ultimately implicated defendant. It was therefore clear "what changed" that led to police suspecting defendant, and it is unclear why trial counsel needed to hire an investigator to piece this together.[1]

---

[1] As part of this argument, defendant also seems to suggest that his trial counsel should have called the "first detectives on the case" as witnesses "so that the jury could be informed" about the differences between defendant and the initial description of the suspect in this case. This argument ignores that defendant's trial counsel brought this information out during his cross-examination of

Lastly, defendant argues that his trial counsel needed to investigate the "suggestive and/or threatening tactics" used by the detectives that led Sullivan to implicate defendant. During trial, defendant's counsel asked Sullivan about the multiple occasions that she was questioned by the police and the potential effect that the police may have had on her recollection. Trial counsel then argued in his closing that Sullivan could not actually remember what happened on the night of the incident, that the police fed her additional information each time they met with her to implicate defendant, that she only said what she thought that the police wanted to hear because she was afraid that they would charge her with a crime if she did not, and that her testimony only implicated defendant because she was threatened with possible perjury if her testimony did not match what she told the police. Thus, trial counsel squarely placed before the jury the possibility that the detectives used suggestive and/or threatening tactics to convince Sullivan to implicate defendant, but the jury rejected the argument.

## B. COMMUNICATION WITH TRIAL COUNSEL REGARDING DEFENSE

Defendant next argues that trial counsel failed "to effectively communicate with [defendant] so that he could review discovery material and assist in his defense." We disagree.

Trial counsel testified at the hearing on defendant's motion for a new trial that he met with defendant many times from the beginning of his representation of defendant at the preliminary examination through trial. Trial counsel stated that he reviewed the discovery materials and discussed trial strategy with defendant. In fact, defendant admitted at the *Ginther* hearing that trial counsel showed him, or gave him the opportunity to view, the witness interview videos. Moreover, defendant demonstrated his in-depth knowledge about his case, the individuals involved, each witness's statement, and the overall sequence of events. Defendant's knowledge and analysis of the facts suggests that he was quite involved in his case from its inception, and has not been deprived of information by trial counsel. Regardless, even if trial counsel failed to adequately communicate with defendant, defendant has not established or explained how the outcome of his trial would have been different had he been more thoroughly informed. As a result, defendant was not denied effective assistance of counsel for trial counsel's alleged failure to communicate.

## C. JURY POOL

Defendant also argues that trial counsel failed to object to the potentially tainted jury pool after a possible juror indicated during voir dire, and in the presence of other potential jurors, that if defendant did not testify he had something to hide. Counsel's decisions relating to the selection of jurors is generally a matter of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). Defendant was not denied effective assistance of counsel by trial counsel's failure to object to the jury pool. The potential juror's statement that she would hold defendant's choice to not testify against him was made during jury selection. After the potential juror's statement, trial counsel promptly challenged the juror, and the trial court immediately dismissed the potential juror. As a result, the potential juror had no part in defendant's trial. The trial court instructed the

---

White, so it was before the jury without needing to call the "first detectives on the case" as witnesses.

empaneled jury that they must be fair, impartial, and not use defendant's absolute right not to testify against him in any way, and the empaneled jury stated they would follow the trial court's instructions. Because juries are presumed to follow their instructions and trial counsel is not ineffective for failing to advance a meritless position, defendant was not denied effective assistance of counsel for trial counsel's failure to object to the entire jury pool. *People v Brunner*, 501 Mich 220, 228; 912 NW2d 514 (2018); *Henry (After Remand)*, 305 Mich App at 141.

## D. EXCULPATORY EVIDENCE

Defendant argues that trial counsel was ineffective for his failure to present exculpatory evidence at trial, such as information regarding the white Cadillac, Howard, the initial description of the suspect by White, Sullivan's statements in contrast with White's, and Scott's statement contained in the police report from the night of the incident. We disagree.

As previously stated, information about the white Cadillac, Howard, and White's initial description of the suspect were all placed before the jury. Defendant also places much emphasis on White's statements in contrast to Sullivan's and on interviews that White gave in 2007 and 2015 in which he claimed that the perpetrator was black. What arguments to make and what evidence to place before the jury are generally matters of trial strategy. *People v Russell*, 297 Mich App 707, 716, 76; 825 NW2d 623 (2012). At the *Ginther* hearing, defendant's trial counsel explained that White admitted that he was highly intoxicated on the night of the shooting and that he could have been mistaken about certain aspects of his descriptions of the shooting and the shooter, and further explained that his chosen trial strategy was to discredit Sullivan. That is, rather than emphasizing statements made by White, whose credibility was clearly in question, defendant's trial counsel instead focused on raising questions about Sullivan's credibility and encouraged the jury to discount her testimony. Defendant has not overcome the strong presumption that this was sound trial strategy under the circumstances. *Toma*, 462 Mich at 302.

Finally, defendant contends further emphasis should have been placed on Scott's statement contained in the police report from the night of the incident because it established that defendant did not follow White to the gas station. Defendant correctly points out that, in the police report, Scott told police that he watched defendant pull away in a purple economy car with his girlfriend on "WB Van Born towards Beech Daly." However, at trial, Scott testified that after defendant was removed from the bar, he thought Sullivan and defendant left in their vehicle driving away from the bar, but they did not, they waited for White. Scott further testified that he watched Sullivan and defendant follow White to the gas station and then pull out of the gas station behind the vehicle White was in, towards Beech Daly. At the *Ginther* hearing, when asked why he did not highlight this discrepancy at trial, defendant's trial counsel stated:

> [Defendant] followed [White] over to a nearby gas station, which was on video, and the video showed him, as I indicated, following that person and then leaving in that maroon car.

We conclude that it was not objectively unreasonable for defendant's trial counsel to not impeach Scott when video evidence established that Scott's initial statement to the police was incorrect. Moreover, even if it was objectively unreasonable for trial counsel to not impeach Scott,

we cannot conclude that the result of defendant's trial would have been any different in light of the video evidence contradicting Scott's initial statement to the police.

## E. FAVORABLE WITNESSES

Next, defendant argues that trial counsel failed to call favorable witnesses that would have testified about the suggestive comments made by police to influence the witnesses' recollection of the incident. The decision whether to call or question witnesses is presumed to be a matter of trial strategy. *Russell*, 297 Mich App at 716. Defendant argues that Lopez should have been called as a witness at trial to testify regarding Sergeant Mueller's threatening and coercive questioning during witness interviews. A review of the record establishes, however, that trial counsel was aware of Lopez but never considered calling her as a witness because:

> she was one of the witnesses that had contacted the police initially which implicated [defendant]. If I had called her, I believe it would have resulted in benefit to . . . the prosecution's case.

It is therefore apparent that excluding Lopez as a witness was a matter of trial strategy because counsel was concerned that Lopez's testimony would have hurt defendant's defense. Moreover, nothing supports defendant's suggestion that Lopez's testimony would have corroborated defendant's claim that Sergeant Mueller influenced her statements, so defendant has failed to establish the factual predicate of this claim. *Hoag*, 460 Mich at 6.

## F. *GINTHER* HEARING DVDS

Lastly, defendant argues that trial counsel failed to admit DVD footage at trial containing police interviews[2] with Sullivan to show how she was allegedly influenced and manipulated by the police to implicate defendant.

Defendant appears to contend that his trial counsel should have admitted the entire video recording of Sullivan's interviews with Sergeant Mueller to show how he "influenced" her testimony. Defendant does not explain how the *entire* recording of the interviews could have been admitted. Defendant cites rules and caselaw for the proposition that impeachment evidence and prior inconsistent statements are admissible evidence, but to whatever extent *parts* of the video may be admitted under those rules, clearly the entire recording is not impeachment evidence or prior inconsistent statements. We cannot conclude that defendant's trial counsel was ineffective for failing to raise a meritless argument. *Henry (After Remand)*, 305 Mich App at 141.

Moreover, even if defendant's trial counsel could have admitted the entire recording of Sullivan's interviews, defendant cannot overcome the presumption that trial counsel's decision not to do so was trial strategy. The interviews were hours long, and not all of the interview footage was favorable to defendant. Indeed, at the *Ginther* hearing, defense counsel played four minutes

---

[2] Although defendant refers to multiple "interviews" on appeal, the DVD footage that defendant provided this Court contains only a single interview made up of three separate videos.

of an interview for the trial court that counsel argued "goes to how the story completely changed after the fact." After reviewing the footage, the court opined:

> And your idea that playing this whole interview—I mean the part that I just watched was very damming [sic] to the [d]efendant. You want to play four hours of video evidence where there is one, two minutes of it is he fired the gun in the air and the rest of it is very incriminating, there is probably good reason why he wouldn't want to play very much of that video because the statement was largely incriminating[.]

It was not unreasonable for defendant's trial counsel to highlight Sullivan's inconsistent statements, attack her credibility, and put in front of the jury how she may have been influenced by the detectives through cross-examination instead of by forcing the jury to sit through hours of interview footage, much of which would have damaged defendant.

Finally, even assuming that it was objectively unreasonable for defendant's trial counsel to not admit the entire video of Sullivan's interviews, defendant cannot establish prejudice. Sullivan was cross-examined at length about inconsistent statements she made during the interviews, and defendant's trial counsel focused throughout trial on attacking Sullivan's credibility. Moreover, during trial counsel's cross-examination of Detective Mueller, trial counsel focused on drawing out how the detective may have influenced Sullivan to implicate defendant by repeatedly interviewing her for long periods, suggesting that she could be a suspect, and telling her that the prosecutor's office could offer her immunity. Finally, in his closing argument, defendant's trial counsel argued that Sullivan was influenced and manipulated by the detective to implicate defendant. Thus, defendant's argument that the detective influenced and manipulated Sullivan was already before the jury, and the jury rejected the argument. We are not convinced that this result would have been different had the jury sat through hours of Detective Mueller's interviews with Sullivan.

Affirmed.

/s/ Anica Letica
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien