*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ADRIAN DESHAWN HILL,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2024

No. 359801
Oakland Circuit Court
LC No. 2020-275569-FC

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant, Adrian Deshawn Hill, pleaded no contest to second-degree murder, MCL 750.317, and related gun charges, for killing his girlfriend. The trial court sentenced Hill, as a fourth-offense habitual offender, MCL 769.13, to 50 to 87½ years' imprisonment for second-degree murder. Hill now appeals by delayed leave granted,[1] challenging the proportionality of his within-guidelines sentence based on our Supreme Court's recent decision in *People v Posey (Posey II)*, 512 Mich 317, 349-360; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). Hill claims that he is entitled to resentencing because his sentence constitutes a de facto life sentence, and the trial court sentenced him as if he committed first-degree murder. Because Hill has failed to rebut the presumption of proportionality underlying his within-guidelines sentence for second-degree murder, and he has failed to show that the trial court sentenced him for first-degree murder, he is not entitled to resentencing. We affirm.

## I. BACKGROUND

This case arises from the murder of Markia Leggett (Leggett). Before her death, Leggett and Hill were in a years-long romantic relationship, which Leggett's mother characterized as "tumultuous and violent." In March 2020, Leggett came home to her apartment complex where she lived with her two children, 13-year-old KM and 4-year-old CR. As Leggett parked her car,

---

[1] *People v Hill*, unpublished order of the Court of Appeals, entered August 16, 2023 (Docket No. 359801).

Hill angrily approached the vehicle and told Leggett that he was there to "get his Hennessey." Leggett exited her vehicle, leaving KM and CR behind, and entered her apartment with Hill. Soon after, KM heard several gunshots and saw Hill quickly leave the apartment, get into his car, and drive away. After Hill left, KM attempted to check on her mother in the apartment, but Leggett did not answer the door when KM knocked, and KM could not open the door. KM called 911 and the responding officers entered the apartment to find Leggett "slumped over" on the kitchen floor with several gunshot wounds. Leggett was transported to the hospital and pronounced dead.

Hill was charged with one count each of first-degree murder, MCL 750.316, second-degree murder, and felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b. The prosecutor also filed a fourth-offense habitual offender enhancement notice. On the day of Hill's scheduled jury trial, he pleaded no contest to second-degree murder, felon-in-possession, and two counts of felony-firearm, in exchange for dismissal of the first-degree murder charge. Hill also agreed that he would be sentenced as a fourth-offense habitual offender and that there was no sentencing agreement included with his plea.

A presentence investigation report (PSIR) was prepared for Hill's sentencing. The PSIR highlighted Hill's family history, including the extreme abuse he suffered at the hands of his father during childhood. In addition, the PSIR detailed Hill's extensive criminal history, including several felony convictions for unlawful possession of a firearm. The probation officer preparing the PSIR scored the prior record variables (PRV) and the offense variables (OV) for Hill's crimes. Relevant here, for his second-degree murder conviction, Hill was assessed 25 points for OV 6. Based on the total PRV and OV scores, which Hill did not object to at sentencing, his minimum sentencing guidelines range for his second-degree murder conviction was calculated at 315 to 1,050 months' imprisonment (26½ to 87½ years' imprisonment). The probation officer recommended a "significant term of incarceration" based on the "heinous" nature of Hill's crimes.

At the time of sentencing, Hill was 33 years old. During the sentencing hearing, Leggett's family members spoke about the senselessness of the murder and the profound impact that Leggett's death had on them. Defense counsel acknowledged that it was troubling that there "didn't appear to be any . . . rhyme or reason as to why this . . . homicide occurred," but he argued that Hill should be sentenced at the lower end of the sentencing guidelines because of his history of childhood abuse and his willingness to accept responsibility. By contrast, the prosecutor argued that Hill should be sentenced to 50 years' imprisonment for his second-degree murder conviction because of the pain and trauma that Hill's actions created for Leggett's family.

During his allocution, Hill expressed remorse for killing Leggett and explained that alcohol contributed, in part, to her murder. The trial court acknowledged Hill's alcohol use, but stated that his actions appeared calculated based on his conduct leading up to the murder. Although the trial court considered Hill's childhood abuse, based on the PSIR, the senselessness of the murder, Hill's "lengthy criminal history," and his "fascination with guns," the court found that there was a need to "protect the community . . . from [Hill]." Accordingly, the trial court sentenced Hill for second-degree murder as noted above, 6 to 25 years' imprisonment for felon-in-possession, and 5 years' imprisonment for his felony-firearm convictions, to be served consecutively to his other sentences. This appeal followed.

## II.  STANDARDS OF REVIEW

We review a within-guidelines sentence for reasonableness.  *People v Posey (On Remand) (Posey III)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 345491); slip op at 2.

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." [*People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015).]

The trial court necessarily abuses its discretion "if the sentence imposed is disproportionate to the seriousness of the circumstances involving the offense and the offender." *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 5.  We review constitutional due process claims under a de novo standard.  *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021).  De novo review means that we review an issue independently, without any required deference to the courts below.  *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

## III.  RESENTENCING

Hill argues that he is entitled to resentencing because his within-guidelines sentence is disproportionate and unreasonable, and the trial court sentenced him as if he were convicted of first-degree murder.

### A.  *POSEY*'S EFFECT ON THE REVIEW OF WITHIN-GUIDELINES SENTENCES

Under MCL 769.34(10), the Court of Appeals was previously required to affirm within-guidelines sentences absent an error in scoring the guidelines or evidence that the trial court relied on inaccurate information when determining a criminal defendant's sentence.[2]  Recently, however, our Supreme Court held that this requirement was unconstitutional.  *Posey II*, 512 Mich at 343-357 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390-414 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment).  Accordingly, *Posey II* held that a within-guidelines sentence must be reviewed for reasonableness to determine whether the sentence is proportionate to the offender and the seriousness of the circumstances of the offense.  *Id*. at 355-356 (opinion by BOLDEN, J.).  There is "a nonbinding rebuttable presumption of proportionality," *id*. at 360, and "the defendant bears the

---

[2] The statute provides: "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."  MCL 769.34(10).

burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate," *id*. at 359.

## B. PROPORTIONALITY

Hill first argues that although his sentence for second-degree murder was within the guidelines range, it was disproportionate and unreasonable because it constitutes a de facto life sentence.

"Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Any sentence within that range "should be tailored to the particular circumstances of the case and offender." *Id*. When imposing a proportionate sentence, the trial court should consider "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Id*. But these are not the only relevant factors for the trial court to consider, and the court is "not required to consider each of these factors when imposing a sentence." *Id*. at 183-184. When determining proportionality, our Supreme Court has " 'observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system.' " *Posey III*, ___ Mich App at ___; slip op at 3, quoting *People v Milbourn*, 435 Mich 630, 668; 461 NW2d 1 (1990). " 'The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment.' " *Posey III*, ___ Mich App at ___; slip op at 3 , quoting *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003).

In *Purdle*, ___ Mich App at ___; slip op at 3, 5-6, this Court considered whether the defendant's age could overcome the presumption of proportionality. In that case, after a heated argument, the defendant shot and killed a woman he was dating. *Id*. at ___; slip op at 1, 6. The defendant "had a lengthy criminal history," and a history of threatening women with firearms during arguments. *Id*. at ___; slip op at 6. A jury convicted the defendant of second-degree murder, and the trial court sentenced him as a fourth-offense habitual offender to a within-guidelines sentence of 680 to 960 months' imprisonment. *Id*. at ___; slip op at 1-2. Based on his sentence, the 31-year-old defendant would not be eligible for parole until he was 89 years old. *Id*. at ___; slip op at 5. On appeal, the defendant argued that his sentence was disproportionate to his offense because it constituted a de facto life sentence. *Id*. at ___; slip op at 3, 5. This Court, however, affirmed the defendant's sentence, finding that "a defendant's age is insufficient to overcome the presumption of proportionality, especially when considered in light of a criminal record and the gravity of his offenses." *Id*. at ___; slip op at 5-6. Because the defendant's long history of criminal behavior and prior threats against women "demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system," and his behavior during the commission of his crime was "significantly egregious," this Court affirmed his sentence. *Id*. at ___ ; slip op at 6-7 (cleaned up).

In this case, Hill was 33 years old at the time of sentencing. The trial court sentenced him to 50 to 87½ years' imprisonment for second-degree murder, meaning that, without considering Hill's other sentences, he would be at least 83 years old by the time he would be considered for

parole. This, Hill claims, amounts to a de facto life sentence. But much like the defendant in *Purdle*, Hill's age alone cannot overcome the presumption of proportionality given his criminal history and the egregious nature of his crime. Hill has an extensive criminal history, including several gun-related offenses. It was this criminal history that triggered Hill's fourth-offense habitual offender enhancement, and thus led to his higher-than-usual sentencing guidelines range. On the day of the murder, Hill angrily approached Leggett's car and saw that her two children were with her inside the vehicle. Despite this knowledge, after shooting Leggett multiple times, Hill fled the crime scene without seeking medical assistance, leaving Leggett's 13-year-old and 4-year-old children alone, at night, while their mother was dead inside their apartment. The trial court acknowledged these facts, as well as Hill's history of childhood abuse, but found that based on the senselessness of the murder, Hill's "lengthy criminal history," and "fascination with guns," there was a need to "protect the community[.]" Given the seriousness of his offense and his "unwillingness" to obey the law, Hill's age alone does not render his within-guidelines sentence disproportionate, and he has failed to rebut the presumption of proportionality. Therefore, on these grounds, he is not entitled to resentencing.

### C. CONSIDERATION OF DISMISSED CONDUCT DURING SENTENCING

Hill also argues that despite pleading no contest to second-degree murder, the trial court improperly considered his dismissed conduct and sentenced him for first-degree murder.

In *People v Beck*, 504 Mich 605, 626-629; 939 NW2d 213 (2019), our Supreme Court held that a trial court cannot consider acquitted conduct at sentencing. *Beck* "described 'acquitted conduct' as conduct that has been formally charged and specifically adjudicated not guilty by a jury." *People v Brown*, 339 Mich App 411, 421; 984 NW2d 486 (2021) (cleaned up). "But *Beck* expressly permits trial courts to consider uncharged conduct and any other circumstances or context surrounding the defendant or the sentencing offense." *People v Beesley*, 337 Mich App 50, 62; 972 NW2d 294 (2021) (cleaned up).

Hill claims that the *Beck* holding should be extended to include dismissed conduct. But dismissed conduct is far more akin to uncharged conduct than acquitted conduct. Unlike acquitted conduct, neither dismissed conduct or uncharged conduct has been "specifically adjudicated not guilty by a jury." *Brown*, 339 Mich App at 421 (cleaned up). In fact, "this Court has recognized that a sentencing court may consider the nature of a plea bargain and the charges that were dismissed in exchange for the plea for which the court is sentencing." *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). Thus, even if the trial court considered dismissed conduct during sentencing, there would have been no error under *Beck*.

Hill also contends that the trial court's comments during sentencing showed that he was sentenced for first-degree murder even though he pleaded no contest to second-degree murder.

First-degree murder includes "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing," MCL 750.316(1)(a), while "[a]ll other kinds of murder" constitute second-degree murder, MCL 750.317. Put differently, "a conviction of first-degree murder requires a finding of all the elements of second-degree murder, plus an additional element." *People v Yeager*, 511 Mich 478, 501; 999 NW2d 490 (2023). Thus, a defining difference between first and second-degree murder can be whether the killing was willful,

deliberate, and premeditated. When calculating the sentencing guidelines, OV 6 accounts for these differences. OV 6 involves "the offender's intent to kill or injure another individual." MCL 777.36(1). 25 points must be assessed for OV 6 if the offender had an "unpremeditated intent to kill, the intent to do great bodily harm," or his actions "created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). On the other hand, 50 points must be assessed for OV 6 if the offender had a "premeditated intent to kill" or the killing occurred during the commission of a concurrent felony. MCL 777.36(1)(a).

During sentencing, the trial court stated, in relevant part:

> Uh, I, I think it was, uh, I don't know if it was her mother who pointed out that, uh, you lie, you lie and you wait, uh, for her, like kind of like a stalking. Uh, you lie and wait for her and then she pulled up with her children and even when you knew her children were there you didn't think twice about, uh, whatever you were going to do.

Although the trial court's "lie and wait" reference resembles the "lying in wait" requirement of first-degree murder, the trial court was simply commenting on Hill's actions leading up to Leggett's murder. The assessment of 25 points for OV 6 indicated that Hill's lack of premeditation was accounted for when calculating the sentencing guidelines. The record shows that the trial court reviewed the PSIR with the parties and, based on the scoring of the guidelines, the seriousness of Hill's offense, and his criminal history, the court sentenced Hill to a within-guidelines sentence for his second-degree murder conviction. Because the sentencing guidelines range accounted for his lack of premeditation, Hill has failed to prove that he was sentenced for first-degree murder, and, by extension, that he is entitled to resentencing.

We affirm.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford

-6-