*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DANIEL BAIRD,

Defendant-Appellant.

UNPUBLISHED
December 09, 2025
1:15 PM

No. 372930
Otsego Circuit Court
LC No. 2023-006601-FH

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of operating while intoxicated (OWI), MCL 257.625(1), MCL 257.625(9)(c); operating with a suspended driver's license, MCL 257.904(1); and having an open alcohol container in a vehicle, MCL 257.624a. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent jail terms of 12 months for the OWI conviction,[1] 30 days for the operating with a suspended license conviction, and 30 days for the open container in a vehicle conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Shortly after midnight on May 27, 2023, Michigan State Police (MSP) Trooper Jonathan Wehner was operating a marked police vehicle on South Otsego Road, and observed a vehicle going slower than the posted speed limit and drifting across the centerline of the road; when the vehicle drifted across the centerline, the driver would make sudden, jerking movements to correct his position. Trooper Wehner initiated a traffic stop. At trial, Trooper Wehner identified defendant as the vehicle's driver. After observing that defendant had bloodshot, watery eyes, and smelling the odor of intoxicants from inside defendant's car, Trooper Wehner conducted a series of field

---

[1] Defendant was also sentenced to a probation period of three years for the OWI conviction, to begin on defendant's release from incarceration; the trial court ordered defendant to serve 30 days of his 12-month jail sentence for that offense, with the balance of that sentence held in abeyance pending successful completion of his probation.

sobriety tests. Defendant failed all three tests, which led Trooper Wehner to place him under arrest on suspicion of OWI. Defendant was transported to a local hospital, where samples of his blood were drawn for testing using an MSP blood kit. The samples were mailed to the MSP Crime Lab, where lab technician Lindsay Norris received the samples, verified that they were still intact, and cataloged them for testing. Forensic scientist Tabitha Faust, who testified as an expert in toxicology at trial, analyzed the samples for the presence of alcohol. Faust determined that the blood-alcohol content (BAC) of the samples was 0.089 grams of alcohol per 100 milliliters of blood, which is 0.009 grams per 100 milliliters above the legal limit. See *People v Lyon*, 310 Mich App 515, 518; 872 NW2d 245 (2015); MCL 257.625(1).

At trial, defendant objected to the admission of Faust's lab report, arguing that its admission violated the Confrontation Clause because Norris played a part in developing the report, yet did not testify at trial. The trial court overruled the objection. Additionally, defendant sought a special jury instruction regarding his BAC level, which the trial court denied. Defendant was convicted and sentenced as described. This appeal followed.

## II. STANDARD OF REVIEW

"Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Washington*, 514 Mich 583, 592; 22 NW3d 507 (2024), quoting *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011) (quotation marks omitted); see also *People v Brunner*, 501 Mich 220, 226; 912 NW2d 514 (2018). We also review de novo the trial court's adoption or rejection of special jury instructions. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003), citing *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003).

## III. RIGHT OF CONFRONTATION

Defendant argues that the trial court violated his Sixth Amendment right to be confronted with the witnesses against him; specifically, defendant argues that his conviction of OWI should be overturned because the lower court infringed upon his Sixth Amendment right of confrontation by admitting defendant's BAC results when Norris, the lab technician who prepared the samples for testing, did not testify at trial. We disagree.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that criminal defendants enjoy the right to be confronted with any witnesses against them. US Const, Am VI. This confrontation right has been incorporated to apply to the states through the Fourteenth Amendment. See US Const, Am XIV; *Brunner*, 501 Mich at 227. The threshold question when determining whether a defendant's confrontation right has been implicated is whether the evidence at issue is testimonial. *Id*. This is because the language of the Confrontation Clause strictly applies to "witnesses" against defendants, defined as those who testify at trial. *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Testimony is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. (quotation marks and citation omitted; alteration in original). Even if a witness is absent from trial, the witness's statements, if offered as evidence, may still be testimonial and accordingly may only be admitted if the accused had a prior opportunity to cross-examine the witness. *Id*. at 59.

This Court has held that the absence of an analyst who authored a laboratory report rendered that report inadmissible under *Crawford*. *People v Lonsby*, 268 Mich App 375, 392-393; 707 NW2d 610 (2005). Additionally, testimony from a supervisor regarding reports authored by his subordinates has been found not sufficient to protect the confrontation rights of the accused. *People v Dendel*, 289 Mich App 445, 473; 797 NW2d 645 (2010).

In this case, defendant argues that the admission of the lab report without Norris's testimony violated his confrontation right. The lab report itself is testimonial in nature, serving as a declaration of the fact of defendant's BAC at the time of his operation of the vehicle, and this evidence was presented at trial through Faust's testimony. But Norris's role in the preparation of Faust's report was not testimonial. Faust's report indicates that Norris merely catalogued the blood samples upon receiving them and checked the vials for breakage; Norris did not form, or participate in the forming of, any conclusions regarding defendant's BAC. Unlike the reports at issue in *Lonsby* and *Dendel*, Faust was the sole author of the report admitted at trial and was available for defendant to cross-examine. Moreover, Faust testified at trial that she had reexamined the samples of defendant's blood herself to make sure they had been stored and labeled properly. Defendant was therefore able to cross-examine Faust on the issue of the proper handling and storage of his blood samples; cross-examination of Norris on that issue would have been unnecessary to preserve defendant's right of confrontation.

Defendant also argues that his right to confront all individuals involved in the analysis of his blood sample is all the more important because of the closeness of his BAC result to the legal limit. However, defendant provides no authority for the proposition that when a defendant's BAC is near the legal limit, his right of confrontation extends to every person involved in the collection and processing of his blood samples, regardless of how tangentially they were involved. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (quotation marks and citation omitted; second alteration in original).

Additionally, defendant presented no evidence at trial to support his contention that Norris may have "manipulated" defendant's blood samples. Rather, the evidence presented at trial shows that Norris merely examined the samples for potential breakage and cataloging. Furthermore, as stated, Faust testified at trial that she reexamined the samples herself. Defendant has not established that his constitutional right to be confronted by his accusers was violated by the admission of the lab report and Norris's absence from the trial. *Washington*, 514 Mich at 592.

IV. SPECIAL JURY INSTRUCTION

Defendant also argues that the trial court violated his constitutional right to present a defense by denying his request for a special jury instruction regarding potential inferences that the jury could draw from defendant's BAC results. We disagree.

Under the United States and Michigan constitutions, a criminal defendant is ensured the right to present a defense. Const 1963, art 1, § 13; US Const, Ams VI and XIV. A criminal defendant also has the right to have a "properly instructed" jury review the evidence against him. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). " 'Instructional errors that directly

affect a defendant's theory of defense can infringe a defendant's due process right to present a defense.' " *People v Leffew*, 508 Mich 625, 643-644; 975 NW2d 896 (2022), quoting *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002). Jury instructions must therefore include all potential theories, so long as those theories are supported by evidence. *People v Kosik*, 303 Mich App 146, 155; 841 NW2d 906 (2013).

In this case, the trial court instructed the jury as follows regarding defendant's BAC results:

You may also consider bodily alcohol content in reaching your verdict. In that regard, was that test technically accurate. Was the equipment properly assembled and maintained and in good working order when the test was given. Were the test results reliable. Was the test given correctly. Was the person who gave it properly trained. Did the circumstances under which the test was given affect the accuracy of the results. One way to determine whether a person is intoxicated is to measure how much alcohol is in their blood. There was evidence in this trial that a test was given to the Defendant, the purpose of this test is to measure the amount of alcohol in his blood. If you find that there were .08 grams or more of alcohol per 100 milliliters of his blood when he operated the vehicle, you may find that the Defendant operated the motor vehicle with an unlawful bodily alcohol content whether or not this alcohol affected his ability to operate the motor vehicle. *You may infer that the Defendant's bodily alcohol content at the time of the test was the same as his bodily alcohol content at the time that he operated the vehicle.*

In considering the evidence and arriving at your verdict, you may give the tests whatever weight you think that they deserve. The results of the test are just one factor that you may consider along with all the other evidence about the condition of the Defendant at the time that he operated that vehicle. [Emphasis added.]

This instruction is consistent with the standard jury instruction regarding this issue. See M Crim JI 15.5.

Defendant requested that the trial court give the jury a special instruction stating in relevant part, "you *do not* have to infer it was the same at the time of operation, [and] if you believe the Prosecutor has not proven that the BAC was not [sic] above the legal limit you can find the Defendant not guilty." (Emphasis added.) The trial court denied defendant's request.

We find no error in the trial court's instruction to the jury. Defendant's proposed jury instruction merely presented the emphasized portion of the standard instruction with negative phrasing. Any prejudice created by the absence of negative phrasing was negligible, if not nonexistent; either instruction permits the jury to consider whether the testing procedures were followed and whether the testing conditions affected the accuracy of the test results.

Defendant argues that the trial court's instruction to the jury prevented it from finding that defendant's BAC was different when he was operating the vehicle than it was at the time of testing. Specifically, defendant argues that the instruction prevented him from presenting the defense that

the blood samples were not stored properly in transport, potentially altering the test results. We disagree. Defendant in fact made such an argument at trial, and nothing in the text of the instruction given to the jury prevented the jury from considering it; indeed, the instruction not only asks the jury to consider all of the circumstances under which the test was given, but informed the jury that it was not required to give the blood test any particular weight. Additionally, defendant's counsel emphasized in his closing argument that although the jury was *permitted* to infer that defendant's BAC at the time of the test was the same as his BAC at the time defendant operated the vehicle, it was not *required* to make such an inference, and that it should not do so because it should find that the proper procedures for collecting and testing defendant's blood were not followed. The prosecution, by contrast, argued that the jury could make such an inference because the evidence showed that the collection and testing of defendant's blood samples was performed properly. Defendant has not established that instructional error occurred when the trial court instructed the jury according to the standard jury instruction. *Perez*, 469 Mich 415.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young