*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD JAMES GUICHELAAR,

Defendant-Appellant.

FOR PUBLICATION
December 21, 2023
9:00 a.m.

No. 363588
Kent Circuit Court
LC No. 21-002474-FC

Before: FEENEY, P.J., and RICK and HOOD, JJ.

HOOD, J.

Defendant Richard James Guichelaar appeals by leave granted[1] his sentences for second-degree murder, MCL 750.317, and assault against a pregnant individual intentionally causing a miscarriage or stillbirth, MCL 750.90a, following guilty pleas. The trial court sentenced Guichelaar to 33 years and four months to 100 years' imprisonment concurrent for both counts. We affirm.

## I. BACKGROUND

This case started with Guichelaar's murder of his pregnant wife, Amber Guichelaar. In November 2020, Guichelaar strangled Amber in their home with their two toddler daughters nearby. At the time of the murder, Amber was pregnant, and Guichelaar's conduct induced a miscarriage. Guichelaar called the police the night of the murder. He initially made false statements about the circumstances of her death, but after Amber's autopsy led to his arrest, Guichelaar admitted to strangling and killing his wife. The prosecution charged Guichelaar with open murder, MCL 750.316.

In February 2022, Guichelaar pleaded guilty, pursuant to a plea agreement, to one count of second-degree murder, MCL 750.317, and one count of assaulting a pregnant individual causing

---

[1] *People v Guichelaar*, unpublished order of the Court of Appeals, entered December 2, 2022 (Docket No. 363588).

a miscarriage or still birth, MCL 750.90a. The prosecution placed the plea agreement on the record at the change-of-plea hearing:

> *Prosecutor*: Upon a successful plea and sentence to second-degree murder, and also the added count of assault of a pregnant individual causing a miscarriage by intent or recklessness, *the People and the defense have agreed to a sentencing range of 250 to 400 months*. And it's also my understanding that the Court has agreed to sentence within those guidelines.

> *Court*: All right. And I will state for the record that I have agreed to sentence within those guidelines that the prosecutor and the defense attorney have agreed to. [Emphasis added.]

Guichelaar and his counsel confirmed with the trial court that this was the complete plea agreement. From the record, it does not appear that there was a written plea agreement. Rather, as stated, the prosecution placed its terms on the record, and Guichelaar signed a separate advice of rights form (SCAO Form CC 291). The trial court also prepared and filed two documents identified as "Record of Plea" and "Amended Record of Plea." The documents identified the charges to which Guichelaar pleaded guilty by crime and MCL citation, and next to a field labelled "ADDITIONAL INFORMATION," stated "PARTIES AGREED TO GUIDELINES OF 250-400 MONTHS AND COURT COBBS TO SENTENCING W/IN THOSE GUIDELINES."

The trial court sentenced Guichelaar in April 2022. Prior to sentencing, the probation department prepared a presentence investigation report (PSIR), including a sentencing information report (SIR) with the sentencing guidelines as calculated by probation. The defense submitted objections to the scoring of offense variable (OV) 3 prior to the hearing.

The trial court began the sentencing hearing by addressing Guichelaar's objections. But before ruling on the sentencing guidelines, it noted that the parties had a sentence agreement. "There are—there are sentencing guidelines calculated in this matter; however, there is an agreement that kind of usurps that. We have an agreement that the defendant will be sentenced within the range of 250 to 400 months as a minimum." The trial court accepted the parties' agreement regarding the OV scoring, which reduced the guidelines on Count 2 to 81 to 135 months. It corrected the SIR, and stated, "And, again, those really do not matter in this matter. The second-degree murder guidelines are much higher. And as I mentioned before, there's an agreement for a sentence that takes us out of the guideline issue range [sic]." Next, the trial court accepted the parties' agreement regarding the scoring of OVs for Count 1, which resulted in a minimum range of 180-300 months, significantly lower than the agreed sentencing range.

After scoring the guidelines, Amy Degraaf, Amber's mother, provided a victim impact statement. She described the loss of her daughter and the baby she carried. She asked the court to consider the impact on the two young children left behind and to impose a sentence that "fits the crime."

Both the prosecution and the defense submitted sentencing memoranda. In its memorandum, the prosecution argued for a minimum sentence above 300 months. Guichelaar's counsel presented mitigating evidence. He noted that Guichelaar had a relatively minor criminal

history, including having been to jail three times in the past for misdemeanor offenses. He was remorseful for killing his wife and accepted responsibility after admitting to her killing. Also, medical history indicated that defendant had suffered a closed head injury leading to a number of concussions and struggles with mental health since he was in high school.

Only the defense argued at the sentencing hearing. Guichelaar's counsel argued for the court to impose a sentence within the overlap between the 180- to 300-month guidelines range and the 250- to 400-month sentencing range. He argued that the prosecution's reasoning for sentencing above 300 months were already accounted for in the sentencing guidelines enhancements. The trial court then questioned the defense on certain matters not covered by the sentencing guidelines, including the fact that Guichelaar murdered Amber within a few feet and in view of one of their daughters and that his conduct effectively orphaned he and Amber's children. At sentencing, Guichelaar spoke, expressing remorse for his actions, and stating that he was ready to accept responsibility.

When pronouncing sentence, the trial court observed that the situation Guichelaar created by killing his wife was "absolutely atrocious and terrible." It noted Guichelaar's age and limited criminal history. But it also noted that Guichelaar killed his wife "intentionally" and left both of his daughters without a mother. The trial court also stated that there was "no excuse or justification for this brutal and senseless murder" and that what Guichelaar did was "beyond comprehension." The trial court told Guichelaar that it did not "believe [defendant] should ever be free, quite frankly." The court's only reference to the guidelines was to state that the parties had already discussed them. The court sentenced Guichelaar to 33 years and 4 months (or 400 months) to 100 years in prison.

This appeal followed. On appeal, Guichelaar does not argue that his plea was defective, and he does not seek to withdraw his plea. Instead, he argues that the trial court erred when it sentenced him above his advisory sentencing guidelines range, but within the agreed upon sentencing range.

## II. STANDARD OF REVIEW

Questions of law, such as whether a defendant waived his right to appellate review, are reviewed by this Court de novo. *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009). "De novo review means that this Court reviews the legal issue independently without deference to the lower court." *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 10, citing *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). This Court reviews sentences that go "beyond the guidelines for reasonableness . . . ." *Posey*, ___ Mich at ___; slip op at 26. Reasonableness requires this Court to determine whether the sentences are proportional to the matter on appeal, not whether it adheres to or departs from the guidelines range. *Id*. at ___; slip op at 26, citing *People v Steanhouse*, 500 Mich 453, 473-474; 902 NW2d 327 (2017).

## III. WAIVER

The prosecution argues that Guichelaar waived appellate review of his sentences when he entered into an understanding and voluntary plea to be sentenced to a minimum term between 250

to 400 months. We agree. Guichelaar did not agree to a specific sentence, but he did agree to a specified sentencing range. Part of that specified range overlapped with the guidelines range, and part of the range was above the guidelines. Because his sentencing agreement was not contingent on its relationship to the sentencing guidelines, Guichelaar effectively agreed to the proportionality and reasonableness of sentences within his sentencing range even if they fell outside of the guidelines calculated at sentencing.

Because the outcome of this case turns on the nature of Guichelaar's agreement, we must first understand what exactly Guichelaar agreed to when he pleaded guilty. "For a valid plea agreement . . . there must be an actual agreement on the essential features of the plea." *People v Brinkey*, 327 Mich App 94, 95; 932 NW2d 232 (2019). See also *People v Smith*, 319 Mich App 1, 6; 900 NW2d 108 (2017). We apply general contract principles when construing plea bargains with ambiguous or potentially ambiguous terms. See *People v Rydzewksi*, 331 Mich App 126, 138; 951 NW2d 356 (2020).

Here, despite a brief reference to the "guidelines" during the plea hearing, and references to "guidelines" and "*Cobbs*"[2] in the court's "record of plea" document, Guichelaar's plea agreement was a *Killebrew* agreement,[3] in which he and the prosecution agreed to a specified sentencing range. See MCR 6.302(C)(3)(c) (providing procedures for plea agreements that provide for a defendant's plea in exchange for a sentence within a specified range, among other possible agreements). A "*Killebrew* agreement" is a plea agreement that includes a sentencing agreement in one form or another. See *Killebrew*, 416 Mich at 206-212; see also MCR 6.302(C). This can include an agreement to a specific sentencing term, sentencing within a specified range, or an agreement for the prosecutor to recommend a specified term or within a specified range. See *Killebrew*, 416 Mich at 206-210. See also MCR 6.302(C). By comparison, a *Cobbs* evaluation or *Cobbs* agreement involves the trial court participating in sentencing discussions at the request of a party, by stating "on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." *Cobbs*, 443 Mich at 283. See also *Brinkey*, 327 Mich App at 99 (explaining that when considering if an agreement is a *Cobbs* agreement, a defendant must be agreeing to plead guilty on the basis of the "trial court's preliminary evaluation of the sentence to be imposed.").

The agreement was not a *Cobbs* agreement. Although the "Record of Plea" and "Amended Record of Plea," reference *Cobbs* and the court's agreement "to sentence within those guidelines," this was not a *Cobbs* evaluation; the trial court merely indicated it would accept the plea and sentence agreement that the parties had reached. See MCR 6.302(C). The document identified as "Record of Plea" appears to be court-generated and does not bear Guichelaar or the prosecutor's signature. Rather, the prosecutor placed the entire agreement on the record at the change-of-plea hearing.

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

Instead, the agreement at issue here was a *Killebrew* agreement. Guichelaar's plea agreement included a sentencing agreement that provided his minimum sentence would fall within a specified range: 250 to 400 months. To be clear, this was an agreement to a specified sentencing range, *not* an agreement to a sentence within anticipated guidelines of 250 to 400 months.[4]

Although Guichelaar did not agree to a specific sentence, he agreed to sentencing within a specific range, demonstrating his agreement that a sentence within that sentencing range would be proportionate to the offenses and to him as the offender. See *People v Wiley*, 472 Mich 153, 154; 693 NW2d 800 (2005); *Cobbs*, 443 Mich at 285 and n 11 (explaining that a defendant who pleads guilty with knowledge of the sentence—either from a sentence bargain, prosecutorial recommendation, or a judge's statement of the sort discussed in *Cobbs*—must be expected to be denied appellate relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate). Guichelaar's agreement to a sentence within a specific range waived challenges to proportionality and reasonableness of sentences within that range. See *Wiley*, 472 Mich at 154.

Waiver is "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). Generally, "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Kowalski*, 489 Mich at 503 (quotation marks and citation omitted). "A guilty plea is a waiver of several constitutional rights," including the right to a jury trial, the right to confrontation, and the right against compulsory self-incrimination. *People v Smith*, 319 Mich App 1, 6; 900 NW2d 108 (2017). For a plea to constitute a waiver, it must be intelligently, knowingly, and voluntarily made, meaning, among other requirements done with sufficient awareness of the relevant circumstances and likely consequences. *Id*.

Guichelaar's plea waived any challenge to the proportionality and reasonableness of his sentence to the extent the court sentenced within the parties' specified sentencing range. See *Wiley*, 472 Mich at 154; *Cobbs*, 443 Mich at 285 and n 11. See also *People v Blount*, 197 Mich App 174, 175-176; 494 NW2d 829 (1992). "[W]hen a defendant pleads guilty with knowledge of the sentence that will be imposed, the defendant's plea demonstrates that he or she agrees that the sentence is proportionate to the offense and the offender." *Smith*, 319 Mich App at 6, citing *Cobbs*, 443 Mich at 285. Generally, this is true even for a defendant who pleads guilty pursuant to a plea agreement that provides for a sentence that ultimately exceeds the guidelines range. *Wiley*, 472 Mich at 154; *Smith*, 319 Mich App at 6. But see *Smith*, 319 Mich App at 7-9 (holding that the defendant was entitled to resentencing when "[i]mplicit in the plea agreement was the

---

[4] Guichelaar does not argue anything different on appeal. Although both the prosecutor and the court stated that it was an agreement to be sentenced within those "guidelines," the record indicates that this was a misstatement or mischaracterization. The prosecution clearly stated that the parties agreed to a "sentencing range." There was no other reference to the guidelines during the plea hearing. The fact that Guichelaar's trial counsel argued for sentencing within the overlap between the sentencing range and the calculated guidelines range indicates that trial counsel also understood the agreement was for a specified sentencing range.

understanding that [the] defendant would be sentenced at the low end of an accurate guidelines range"); *People v Price*, 477 Mich 1; 723 NW2d 201 (2006) (remanding because the defendant was entitled to resentencing on the agreement that he would be sentenced within the accurately scored guidelines range). Our Supreme Court has held that "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific sentence." *Wiley*, 472 Mich at 154.

These principles stem from our Supreme Court's decisions in *People v Cobbs* and *People v Wiley*. Both of those cases, however, dealt with a defendant who agreed to a specific sentence or sentencing cap, not a sentencing range. See *Cobbs*, 443 Mich at 279-280; *Wiley*, 472 Mich at 154. In *Cobbs*, the seminal case addressing the trial court's ability to engage in plea discussions, the defendant pleaded guilty in reliance on the trial court's indication that it would not impose a sentence greater than five years. See *Cobbs*, 443 Mich at 279-280, 285 and n 11. When the trial court sentenced the defendant consistent with its initial evaluation, our Supreme Court held that the defendant could not later challenge the proportionality of the sentence he previously agreed to. *Id*. at 285 & n 11. Though *Wiley* was a memorandum opinion containing substantially less factual background, we discern that it also involved a defendant who pleaded guilty to a specific sentence. See *Wiley*, 472 Mich at 154. There, our Supreme Court expanded the breadth of *Cobbs*, holding "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that *specific sentence*." *Id*. (emphasis added). These holdings mirror earlier precedent from this Court (albeit before the guidelines were discretionary). See *Blount*, 197 Mich App at 175 (holding that a defendant waived appellate review of proportionality where the trial court sentenced him consistently with his plea agreement that provided for 20 to 40 years in prison plus two years for felony-firearm, but his sentencing guidelines recommended a minimum term of 12 to 25 years). The through-line of these cases is that a defendant waives appellate review of proportionality when he has agreed to a sentence provided in the plea agreement.

Mapping this principle onto this case, we conclude that Guichelaar waived any challenge to the proportionality of a sentence within the parties' agreed upon specified sentencing range. Although the plea agreement did not provide a specific sentence, like *Cobbs* it effectively set a cap of 400 months. (Notably, it also set a floor of 250 months.) The trial court sentenced him consistently with that cap.

Guichelaar effectively asks for us to read a new cap into his sentencing agreement. His guidelines range was 180 to 300 months, and the specified sentencing range in his agreement was 250 to 400 months. The ranges overlapped between 250 to 300 months. At sentencing, and now on appeal, he appears to acknowledge that a sentence within that range (250 to 300) would be presumptively reasonable and proportionate. See *Posey*, ___ Mich at ___; slip op at 37-38 (holding that within-guidelines sentences are to be reviewed for reasonableness, but applying the presumption of proportionality is appropriate). But it is indisputable that had the court sentenced Guichelaar within his guidelines range, but below the specified sentencing range (in other words, a minimum sentence between 180 months and 249 months), the prosecution could have revoked the plea agreement and gone to trial on open murder. See *People v Siebert*, 450 Mich 500, 510-511; 537 NW2d 891 (1995); *People v Jackson*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363711); slip op at 6-7. Trial counsel appears to have understood this and argued within the 250 to 300 gap. Likewise, if the guidelines range overlapped and exceeded the specified

sentencing range, and the court sentenced Guichelaar within the advisory guidelines range, but *above* the specified sentencing range, he would have been able to withdraw his plea. *Jackson*, ___ Mich App at ___; slip op at 5-7. See also *In re Guilty Plea Cases*, 395 Mich 96, 127; 235 NW2d 132 (1975); *People v Ryan*, 451 Mich 30, 41; 545 NW2d 612 (1996) (noting the general rule that promises made during plea-bargaining must be respected).

Here, Guichelaar has made no effort to withdraw his plea or argue that it was not knowingly intelligently and voluntarily made. See *Blount*, 197 Mich App at 175 (noting and emphasizing "that [the] defendant received exactly the sentence to which he previously had agreed and may not now challenge that sentence, because he has made no effort to withdraw his plea") (citations omitted). In this regard, Guichelaar not only seeks to read-in a cap (but not a floor) on his sentence agreement; he wants the benefit of challenging the validity of his plea without the costs (i.e., going to trial on open murder). Absent an attack on the validity of the plea, we conclude that Guichelaar has waived any appellate challenge to the proportionality and reasonableness of the sentence that was consistent with his sentencing agreement.

Guichelaar's reliance on *People v Price* and *People v Smith* is misplaced, at least in the context of the issues he has presently raised in this appeal. In *Price*, the defendant pleaded guilty pursuant to a *Cobbs* agreement that provided for a minimum sentence within the appropriate sentencing guidelines range. *Price*, 477 Mich at 3-4. The trial court then sentenced the defendant within the sentencing guidelines range as calculated by the court. *Id.* Our Supreme Court subsequently concluded that the trial court incorrectly scored a prior record variable (PRV) and an OV, resulting in incorrectly scored guidelines. *Id.* at 4-5. Because the defendant was not sentenced within the correctly scored guidelines as agreed, the Court remanded for resentencing within the correctly scored guidelines. *Id.* at 5.

Similarly, in *Smith*, the defendant pleaded guilty pursuant to a *Cobbs* agreement that provided for a minimum sentence at the low end of the guidelines. *Smith*, 319 Mich App at 2-3.[5] At the plea hearing, the parties indicated that they calculated the guidelines to be 126 to 210 months. *Id.* The trial court sentenced the defendant consistent with those guidelines, but they were incorrectly scored. *Id.* at 4-5. The court neglected to ask for corrections to the PSIR or the SIR, which provided a minimum guidelines range of 81 to 135 months. *Id.* at 5. This Court held that the defendant agreed to be sentenced to a minimum sentence at the low end of the guidelines range, so even though his ultimate sentence was within the *corrected* guidelines range, he was entitled to resentencing. *Id.* at 6-9 (noting that the parties referred to the agreement as a guidelines sentencing agreement throughout the proceedings, and "[i]mplicit in the plea agreement was the understanding that [the] defendant would be sentenced at the low end of an accurate guidelines

---

[5] This Court described the plea agreement as a *Cobbs* agreement, but it is unclear whether it was a *Killebrew* agreement, *Cobbs* agreement, or a hybrid. See *Smith*, 319 Mich App at 3. The trial court noted the prosecution's agreement to withdraw a habitual offender notice before stating, "And our sentence will be within the guidelines of 126 to 210 months and she does not have any objection towards you on being sentenced at the low end of the guidelines . . . ." *Id.* From this, its unclear if this was a *Cobbs* agreement. Nonetheless, we our bound by our prior determination.

range."). In *Smith*, we noted that the circumstances for that defendant were closer to the defendant in *Price* than in *Wiley* or *Cobbs*. *Id*. at 8.

Unlike *Smith*, this case is closer to *Wiley* and *Cobbs* than *Price*, for three reasons. First, as stated, this case involved an agreement to a specified range that Guichelaar implicitly acknowledged would be reasonable and proportionate.

Second, *Smith* and *Price* both involved plea agreements and sentencing agreements that referenced and incorporated the accurately scored guidelines. See *Price*, 477 Mich at 3-4; *Smith*, 319 Mich App at 6-9. Unlike those defendants, Guichelaar did not plead guilty with the understanding that he would be sentenced within the accurately scored guidelines range. Although both the prosecutor and judge said "guidelines" during the plea colloquy, the record strongly indicates that these were misstatements, and the prosecutor clearly stated that there was an agreement to a sentencing range.[6] This case would yield a different result if Guichelaar had the parties agree to a sentence within the advisory sentencing guidelines, or even if the prosecutor or trial court made specific reference to the anticipated guidelines in relation to his sentencing agreement. See *Price*, 477 Mich at 3-6; *Smith*, 319 Mich App at 6-9. See also *People v Glover*, unpublished per curiam opinion of the Court of Appeals, issued April 19, 2016 (Docket No. 325595) (holding that the defendant did not plead guilty with full knowledge of the circumstances of his plea, where the trial court informed the defendant of an incorrect sentencing guidelines range at the time of the plea).[7]

Third, unlike *Price* and *Smith*, this case did not involve a *Cobbs* agreement. For similar reasons, the outcome of this case would be different if it had involved a *Cobbs* agreement. Our Supreme Court has held that the decision in *Cobbs* "does not exempt the trial courts from articulating the basis for guidelines departures." *People v Williams*, 501 Mich 966, 966; 905 NW2d 605 (2018). In *Williams*, "the trial court failed to articulate any reason for imposing a minimum sentence that was below the applicable guidelines range," so our Supreme Court remanded the case for the trial court to "consult the applicable guidelines range and take it into account when imposing a sentence" and to "justify the sentence imposed in order to facilitate appellate review" as required under *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). *Williams*, 501 Mich at 966. Again, we note that the trial court erroneously described its acceptance of the *Killebrew* plea as a "*Cobbs* to sentencing [within] those guidelines." This case would yield a different result (at least as it relates to waiver) if it had been a *Cobbs* agreement. To

---

[6] We acknowledge that the form of this plea agreement is acceptable under the court rules. See MCR 6.302(C)(1) (permitting the sentencing agreement to be stated on the record or reduced to writing). But we must observe that the confusion regarding the nature of the plea agreement would have been resolved completely by memorializing the plea agreement in writing, such as on the SCAO Form MC 414 Plea Agreement and Sentence Agreement Form.

[7] Though not binding, we may consider unpublished opinions of this Court for their persuasive value. *People v Otto*, ___ Mich App ___, ___ n 11; ___ NW2d ___ (2023) (Docket No. 362161); slip op at 12 n 11. We nonetheless cite *Glover* for its persuasive value and discussion of an issue that with minor changes in the facts would have applied directly to this case.

put it simply, if it were a *Cobbs* agreement, then the trial court judge would have to justify a departure from the sentencing guidelines. Here, due to the waiver, this was no longer required.

We conclude that Guichelaar waived challenges to the proportionality and reasonableness of his sentence. Because he has not challenged the validity of the plea, our analysis begins and ends with this issue.

## IV. CONCLUSION

For the reasons stated above, we affirm. For this reason, we need not address Guichelaar's arguments regarding proportionality and reasonableness, justifying the departure, or disqualification on remand.[8]

/s/ Noah P. Hood
/s/ Kathleen A. Feeney
/s/ Michelle M. Rick

---

[8] We observe that the trial court appears to have considered Guichelaar's mitigating evidence and provided sufficient explanation for why the sentence imposed was proportionate and reasonable considering Guichelaar and his crime. Additionally, we note that the trial court calculated the advisory sentencing guidelines after addressing Guichelaar's objections, which clarified for this appeal that the sentence did involve a departure. See *Williams*, 501 Mich at 966. Its comment that the sentence was not impacted by the guidelines was not error. Because of our disposition of this case on waiver grounds, we need not further address these issues.