*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

MANSON CHARLES MARSH,

   Defendant-Appellant.

UNPUBLISHED
March 20, 2026
10:43 AM

No. 369370
Washtenaw Circuit Court
LC No. 22-000617-FH

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (by force or coercion). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve 2 to 15 years in prison. Finding no errors warranting reversal, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2022, TW reported that defendant sexually assaulted her. TW reported to Trinity Health Emergency Center at Ann Arbor Hospital to be examined by a sexual-assault nurse examiner (SANE). She consented to a sexual-assault forensic exam and reported that defendant had raped her in her home the previous night. TW reported that she was "held" down and described the acts as "very forceful."

At trial, TW detailed the assault. Despite repeatedly telling defendant to "stop" his advances and "chill out," defendant made sexual advances toward TW. Eventually, defendant's "penis went inside [TW's] vagina," and she recalled pushing defendant's chest with her hands. She recalled telling defendant that "it hurts" and that he stopped only once he realized that she was "being serious." TW maintained that she did not want to have sex with defendant at any point on the date of the assault.

Catherine Maggert, a Michigan State Police forensic scientist and DNA analyst, testified as an expert in the area of DNA analysis. The prosecutor presented two stipulated laboratory reports to Maggert. Maggert explained that the lab reports listed the same laboratory number; the

same victim, TW; and the same named suspect, defendant. Relevant on appeal, the prosecutor directed Maggert's attention to Exhibit 5, identified as the "Notice of CODIS Association." The Notice of CODIS Association stated, in relevant part: "A search of the state level of the Combined DNA Index System (CODIS) database resulted in a moderate stringency association between item NV22-1454-1GD (left breast swabs) and DNA database specimen number MI17-0011970. This is deemed investigative information." The report clarified that the DNA database specimen number MI17-0011970 belonged to the "DNA Database Specimen Name: MANSON CHARLES MARSH." Maggert confirmed that the Notice of CODIS Association contained the same laboratory number, the same officer, and the same offense as the previous laboratory reports. And when asked to tell the trial court what the lab report said, Maggert responded, "The report is just detailing the result of a database search and it provides some information from this database and that is reported." Maggert further confirmed that the Notice of CODIS Association "indicated that the sample that was searched was a match to [defendant]" and listed his date of birth.

The prosecutor then questioned Maggert about a laboratory report that she personally prepared. Maggert provided detailed testimony about her DNA analysis and statistics. She testified that she "was able to develop a Y-STR Haplotype from [defendant's] buccal sample" and "that was sufficient for comparison purposes." Maggert also "was able to develop a partial Y-STR Haplotype" that turned out to be "a match to the Y-STR Haplotype from" defendant. Maggert reported that "one out of every one thousand nighty-eight African American males would be expected to" match this particular Haplotype. After the prosecutor finished questioning Maggert, the trial court confirmed with counsel that the exhibits were stipulated and admitted those exhibits.

The trial court asked the jury to write down any questions that it might have for Maggert and received a question that prompted an off-the-record bench conference. Back on the record, the trial court stated that it was "not going to ask these questions of this witness but it's possible we may be able to get that information another way or from another witness." The trial court then released the jury for a break. Outside the presence of the jury, the trial court again questioned the parties about the question that the juror had posed, which was, "[H]ow does data get into the database to begin with?" The trial court considered "whether there's a way that, that I can answer the question that doesn't leave that question lingering in this gentleman's mind." The prosecutor informed the trial court that "the law is changing as to how the DNA samples can get into the database" but felt "most comfortable leaving it as being possible that there's various ways that DNA can be collected, not to make any reference or inference to anything." Defense counsel asked for time to "think about it," which the trial court granted. Defense counsel noted "concerns" about "a very perceptive juror."

Washtenaw County Sheriff's Office Deputy Trent Simms testified that he served as the officer in charge of this case. TW spoke with Deputy Simms at the hospital and provided defendant's name and phone number. Using that information, Deputy Simms ran it through a police database, retrieved a photo of defendant from his driver's license, and confirmed that the phone number that TW provided returned to defendant. After confirming defendant's identity with TW, Deputy Simms investigated further, located defendant's address, and went there to speak with him. A few things stood out to Deputy Simms during this conversation. Defendant denied assaulting TW and claimed that they had consensual sex. At one point, defendant admitted that the "interaction" he had with TW "was a little rough." Defendant also admitted that he heard the word "stop." Deputy Simms took a DNA sample from defendant by buccal swab.

After Deputy Simms's testimony, defense counsel moved for a mistrial. He argued that by asking the database question, the juror improperly inferred that defendant had a criminal history or was in the CODIS database for improper reasons. The trial court denied the motion. The trial court emphasized that only one juror submitted the database question and that the court never read that question to the entire jury. The trial court explained that individuals may appear in the CODIS database for reasons other than a criminal conviction and that Deputy Simms testified immediately after that question and stated that he collected a DNA buccal sample from defendant.

Defendant was convicted and sentenced as described above. Defendant now appeals.

## II. ANALYSIS

## A. MISTRIAL

Defendant contends that the trial court abused its discretion by denying his motion for a mistrial because the Notice of CODIS Association exposed the jury to prejudicial information suggesting that he had a criminal history. We disagree.

"We review for an abuse of discretion a trial court's decision on a motion for a mistrial." *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 72 (2021). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008).

"A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (cleaned up). "Thus, for a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id*. (cleaned up). The moving party has the burden to establish the alleged error was so significant, prejudice cannot be removed in any other way. *Id*. at 54-55.

"During their deliberations, jurors may only consider the evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). To establish that extraneous facts not introduced into evidence influenced the jury and requires a new trial, a defendant must show (1) that the jury was an exposed to an extraneous influence and (2) that the influence "created a real and substantial possibility that [it] could have affected the jury's verdict." *Id*. at 89.

Contrary to defendant's assertions, the Notice of CODIS Association did not expose the jury to information that defendant was listed in a "national database." The Notice of CODIS Association explicitly stated that a search of the *state*-level CODIS database resulted in a moderate stringency association between TW's left breast swab and a specific DNA database specimen. Defendant concedes that no witness explicitly mentioned CODIS by name but maintains that the jury likely inferred criminal history from the Notice of CODIS Association. In this case, defendant's argument rests on the unsupported assumption that a reasonable juror equates CODIS with criminal activity. One juror submitted a written question to the trial court asking, "[H]ow does data get into the database to begin with?" As the trial court noted, the trial court did not read that question to the entire jury and that question came from a single juror. This question does not establish that the juror inferred that defendant had a criminal history or that the juror viewed

CODIS as synonymous with criminal history. Furthermore, it is not "readily apparent" that a DNA sample had been taken in the past because the Notice of CODIS Association does not indicate when a sample was taken or what type of DNA sample was analyzed, and it expressly requested a new sample for verification. On this record, defendant has failed to show that the jury was improperly exposed to and affected by an extraneous influence. See *Budzyn*, 456 Mich at 88-89.

Admission of the Notice of CODIS Association did not violate the Michigan Rules of Evidence. It was not improperly admitted under MRE 404(b) because there was no discussion or evidence of a crime, wrong, or act, other than the one that defendant was on trial for. The Notice of CODIS Association was likewise not improper under MRE 609 because there was no discussion of a previous "conviction."

The jury was not tainted by the admission of the Notice of CODIS Association. The Notice of CODIS Association did not disclose prior crimes, did not label defendant as a previously convicted offender, and did not suggest that CODIS association equated with criminal history. The trial court did not abuse its discretion by denying defendant's motion for a mistrial.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that defense counsel was ineffective because he exposed the jury to prejudicial evidence by allowing the Notice of CODIS Association to be admitted to the jury and denied defendant his right to confront witnesses. We disagree.

"Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review the trial court's findings of fact, if any, for clear error. *Id*. When, as in this case, defendant has not moved for a new trial or a *Ginther*[1] evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or moved in this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020), our review is limited to errors apparent on the record, *Abcumby-Blair*, 335 Mich App at 227.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"The Sixth Amendment of the United States Constitution and Article 1, § 20 of Michigan's Constitution provide a defendant with the right to confront the witnesses against him." *People v Washington*, 514 Mich 583, 592; 22 NW3d 507 (2024). The Confrontation Clause prohibits the admission of any out-of-court statement that is "testimonial" in nature unless the witness making the statement was available at trial or the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed2d 177 (2004). However, "[t]he Confrontation Clause applies only to statements used as substantive evidence." *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011).

In this case, another forensic scientist completed the Notice of CODIS Association and did not testify at trial. Nonetheless, forensic scientist Maggert's testimony about the Notice of CODIS Association was not offered for its truth. Maggert provided "substantive evidence" about the admitted report that she completed. See *Fackelman*, 489 Mich at 528. Maggert detailed testimony about her DNA analysis and the conclusions that she found. Although the prosecutor asked Maggert about the Notice of CODIS Association, Maggert never uttered the word "CODIS" during her testimony nor did she do anything more than read from the document. Although defense counsel stipulated to the Notice of CODIS Association, defense counsel subsequently moved for a mistrial, successfully moved to redact prejudicial information in the SANE report, and repeatedly voice objections in defendant's favor. These actions do not fall below an objective standard of reasonableness.

Additionally, for the reasons described earlier, defense counsel did not perform deficiently by stipulating to the Notice of CODIS Association because the admission of that document did not expose the jury to prejudicial information suggesting that defendant had a criminal history. Defendant was not denied his right to confront witnesses, and defense counsel did not perform ineffectively by stipulating the Notice of CODIS Association.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Philip P. Mariani